IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD D. SEVER,
        Plaintiff

v.

THOMAS PERRIN, et al.,
        Defendants

Case No. 3:11-cv-29-KRG-KAP

Order, Report and Recommendation

Recommendation

      Plaintiff's motion for summary judgment, docket no. 68, should be denied; the medical defendants' motion for summary judgment, docket no. 72, and the corrections defendants' motion for summary judgment, docket no. 83, should be granted. (A note: the same records appear at several places; I will refer to the cited page as it appears in the download of the Electronic Case File, thus Sever's Medical Transfer Comment from the Augusta Correctional Center in the medical defendants' Statement of Undisputed Facts, Exhibit A, page 16, is cited and more quickly found through ECF as docket no. 73 at 23.)

Report

      As the Court remembers from the earlier stages of this matter, plaintiff Sever was briefly at the Somerset County Prison in April and May 2010, and filed a civil complaint against medical personnel and corrections personnel at the prison under Estelle v. Gamble, 429 U.S. 97, 106 (1976), alleging that while he was at the prison on April 10 when he was bitten by a spider that he thinks might have been a brown recluse spider. Sever alleges that his attempts to obtain medical treatment during the month before he was

transported from the prison back to the Virginia corrections system were ignored. The defendants' records indicate that they believe the "bite" was a boil on Sever's back. They deny that they were deliberately indifferent or that Sever had a serious medical need.

At the summary judgment stage, the allegations of a complaint or answer are not sufficient: the moving party must submit or point in the record to evidence that it believes shows that there is no genuine dispute of material fact, and the opposing party must submit or point to evidence that is sufficient to create a genuine dispute as to the material facts in the case. What facts are material depends on the substantive law. In this case the relevant law, whether Sever was a pretrial detainee protected by the Fourteenth Amendment or a sentenced prisoner protected by the Eighth Amendment, is given by Estelle v. Gamble, 429 U.S. 97, 106 (1976):

> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

The Supreme Court has defined the term "deliberate indifference" in Farmer v. Brennan, 511 U.S. 825, 837 (1994):

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

In <u>Estelle v. Gamble</u>, prison medical personnel saw the inmate plaintiff 17 times in 3 months for complaints of severe back pain after an accident in which a 600 pound bale of cotton fell on him. Their treatment was bed rest and pain relievers, and they never took an x-ray or used any other diagnostic technique or treatment to determine whether the inmate's pain might be the result of a broken back. This was not deliberate indifference:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]

429 U.S. at 106.

The Supreme Court has not defined "serious medical need." The Third Circuit began to establish precedent on this point in <u>Boring v. Kozakiewicz</u>, 833 F.2d 468 (3d Cir.1987), <u>cert</u>. <u>denied</u> 485 U.S. 991 (1988), in which three inmates, Perry, Boring and Geidel, were denied elective medical care. For ten months Perry was refused medication or a change in his diet for his periodic migraine headaches. Boring suffered from left ulnar neuropathy causing him intense throbbing pain and spasms of the left hand. Geidel had an injury to his right knee, for which surgery had been scheduled before he was incarcerated. In each case, the Court of Appeals found that the interests of the defendants (like the corrections defendants in this case, the staff of a county prison) in limiting the cost of short term detention justified providing

3

no more than a "reasonable level" of medical care. 833 F.2d at 473, citing Hamm v. DeKalb County, 774 F.2d 1567, 1573 (11th Cir.1985).

"Serious medical need" was defined further in Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), where the Court of Appeals considered whether a county prison was required to provide elective abortions to pretrial detainees. The circuit defined "serious medical need" by the effect of a denial or prolonged delay in treatment: a medical condition that results in "a life-long handicap or permanent loss" is a serious one. A pre-Estelle case cited with approval in Lanzaro, only nine days after Boring held that the Eighth Amendment does not generally require elective treatment, was a case of injunctive relief ordered by the district court requiring a tonsillectomy and sinus surgery for an inmate serving a life sentence who suffered chronic infections from a deviated septum. See Derrickson v. Keve, 390 F.Supp. 905 (D.Del.1975). That suggests that a serious medical need exists if denial or prolonged delay of treatment would cause an inmate's medical condition to deteriorate substantially. In the Court of Appeals' phrasing, the threat of "a tangible residual injury" makes a need serious. Lanzaro, 834 F.2d at 346 (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir.1976).

The Court of Appeals has not provided any further meaningful interpretation of "serious medical need" because the seriousness of the medical care at issue is typically obvious and needs no extended analysis, see e.g. Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir.2003)(insulin dependent diabetes is a serious medical need), or because the issue is touched on in nonprecedential opinions that mostly offer *dictum* and a cursory discussion of the inmate's medical condition in the course of addressing the more commonly dispositive issue of deliberate indifference. See e.g. Navolio v. Lawrence County, 406 Fed.Appx. 619 (3d Cir.2011).

Sever arrived at the Somerset County Prison on April 4, 2010. He alleges that he suffered fever in excess of 100° and excruciating pain from his spider bite from April 10, the day he was bitten, to May 13, the day he left the prison, and that he complained daily about the pain he was suffering to everyone he met and filed written grievances, all to no avail. docket no. 68 at 2-6.

The records kept by the medical providers and corrections staff at the prison indicate that Sever complained after his arrival on April 4, docket no. 73 at 24-25, that he had been injured by the Virginia personnel who had transferred him to Somerset County. Sever asked for (and was granted) access to the law library on April 4, docket no. 68 at 42. On April 8, Sever

5

submitted a request for an extra mattress due to back problems, claiming that Dr. Poggi, the prison's medical director, had said he would approve it. docket no. 73 at 33. Dr. Poggi had examined Sever and prescribed Motrin, an analgesic, and Zantac, an antacid. A note dated April 10 indicated Sever refused those medications, and the dispensary record indicates Sever was a no show for all of his pills during the month of April. An April 13 note by defendant Cinko, the prison health care administrator, refers to Sever not wanting to get out of bed. docket no. 73 at 36. This was three days after the alleged spider bite.

Sever submitted two request slips on April 20. One, to Dr. Poggi, complained about not receiving his desired pain reliever (Alleve) and that "the lump on my back has not receded at all." docket no. 73 at 34. Four minutes later, Sever filed a second request to Dr. Poggi, for an MRI to determine the severity of the injury he claimed to have suffered during transport from Virginia. Id.

On April 23, Sever's request slip indicated that "[I] arrived (S.C.J.) 04-04-10 & to date have not received necessary medical attention with regard to my back injury ~ also; the lump is growing larger upon my back * pain!!!!!!. docket no. 68 at 42. In context, the "back injury" referred to is clearly the alleged transport injury and the "lump" is the alleged spider bite.

At some point on or before April 26, Sever requested the address of the company that transported him to the Somerset County Prison so that he could file a formal complaint against them. It was provided. docket no. 68 at 43.

On April 29, Sever filed a request slip stating "open grievance- medical" on April 29. docket no. 68 at 42. The warden noted that a grievance form was given to Sever on April 30. The grievance as filed complained that Dr. Poggi had promised him a second mattress and Naprosyn (spelled napricen) but that no one followed through with those items. At the end of the page, Sever wrote "also I've shown my back to several nurse's and staff members (knowbuddy done anything)" docket no. 68 at 46. After Sever's present complaint is considered one would conclude this refers to the alleged spider bite, but when the grievance was read and answered it is plain that the treatment of the inflamed area on Sever's back was not even understood as being raised as an separate issue.

On May 8, Sever was brought to the medical department. Kody Donaldson, a corrections officer, wrote an incident report to the warden noting that Sever came out of his cell at about 1:15 a.m. that morning with what appeared to be a "popped spider bite" and that there was blood on Sever's clothing and towel. Donaldson took Sever's contaminated items to the laundry and gave him a clean towel to keep the drainage off the bedding, and informed defendant

7

McCartney, a nurse, of the issue at 6:55 a.m. McCartney, according to the medical records, examined the site and noted it was a swollen reddened area between Sever's shoulder blades the size of a half dollar, with two small openings and dried blood and serous drainage. McCartney reported treating the wound with a topical antibiotic and bandaging it, both on May 8 and May 9. At 9:20 a.m. on May 10, Sever appeared before Judge Cascio in the Court of Common Pleas, and brought up the subject of his medical care, describing his injury as a spider bite that left "a welt on my back the size of a, of a golf ball." Sever explained that the guards "were doing everything they can" but that the warden would not permit him to see the doctor. How Sever came to this conclusion is not known.

Later that day, at 3:30 p.m., defendant McKenzie, a nurse, repeated McCartney's treatment of the previous two days and noted that the site was draining "greenish pus-like fluid."

On May 11, Sever wrote a request slip advising that he thought he had a spider bite and "thirty one days today and still no medical attention?"; the response was that Sever did not have a spider bite, he had a boil "that was being treated." docket no. 68 at 43. The dispensary card indicates that Sever's wound was cleaned and rebandaged again that day by a nurse whose signature is illegible. A note by defendant Cinko indicates that Sever was "placed on dr. line".

On May 13, the date of Sever's next scheduled examination by Dr. Poggi, corrections officers from Virginia came and picked Sever up. Sever relates what he contends are the Virginia guards' medical opinions about his condition, but when he arrived in custody in Virginia, Sever was almost immediately seen by medical personnel who related that Sever had a swelling on his back that when "palpated firmly" shot pus three feet across the room. docket no. 73 at 54-55. A doctor's appointment scheduled for the next day noted that the abscess was drained and a follow up appointment scheduled for 2 weeks later. Sever was prescribed a ten day course of antibiotics and Motrin. docket no. 73 at 45. On May 27, Sever was prescribed a topical antibiotic and Motrin, although the medication record does not indicate that Sever actually appeared for either of these prescriptions as directed. docket no. 73 at 43. In any case, the inflamed area resolved without further treatment, and by mid-June Sever was appearing at medical call complaining about [lower] back pain, asking for a lower bunk and medical shoes, and not mentioning his boil. A culture of the boil taken upon Sever's arrival in Virginia was negative for bacteria. docket no. 73 at 52.

Sever does not allege, much less show, that there was any further treatment or need for any further treatment of his wound. I doubt that anyone having familiarity with boils and spider bites would agree with Sever's claim that he was bitten by a spider. But

9

whether it was a bite or a boil, an injury that resolves quickly, with minimal care, and without residual effects is not under any definition of the term a serious medical need.

It is therefore unnecessary to discuss the concept of deliberate indifference. If it were, Sever has not alleged any basis for believing that any of the corrections officers was deliberately indifferent. He has not produced any evidence that any medical defendant was deliberately indifferent. A medical defendant who does not personally examine or treat an inmate can hardly be indifferent to needs she has no reason to know of. *A fortiori*, in the absence of unusual circumstances (for which there is no evidence presented in the record) it is not negligent or deliberately indifferent behavior for a corrections officer who neither examines nor treats inmates to assume that the medical department is functioning normally and providing adequate care. See Spruill v Gillis, 372 F.3d 218, 236 (3d Cir.2004). A medical defendant who examines an inmate and draws an incorrect conclusion about what that examination shows or what is the proper way to treat the inmate is not deliberately indifferent. For a medical defendant to be liable to Sever for deliberate indifference, Farmer v. Brennan requires, first of all, that defendant to have drawn the conclusion that Sever had a serious medical need. There is no evidence whatsoever that anyone regarded Sever's bite or boil as anything more than a minor complaint.

And that brings me to the last point, the stark discrepancy in the record between Sever's current account of the fever, the excruciating pain, and the stonewalling he encountered, and the humdrum state of the record. If summary judgment were merely a matter of asking whether the jury could find plausible the account Sever tells in his brief, then of course summary judgment would be denied to defendants because considering a summary judgment motion would be equivalent to considering a motion to dismiss. But to find a genuine dispute of fact one must not merely believe Sever's account and disbelieve the defendants, one must ignore the record evidence, that is to necessarily believe that the defendants **for no reason** went to the considerable trouble in the Spring of 2010 of coordinating on several fronts a fabricated record that makes it look like Sever's condition first came to a point where medical attention was needed on May 8, rather than take the rather cheaper course of treating him with ten days of antibiotics on April 10. Why the defendants, at the expense of their professional licenses and at the risk of criminal prosecution would go to the time and expense of fabricating so clumsily such a record, while at the same time providing Sever with library access, access to counsel, access to court, and answers to his other complaints, is unexplained and probably inexplicable. In summary judgment practice the absence of any plausible motive for defendants to engage the conduct alleged of them is relevant to

whether a genuine issue of fact as to that conduct exists. Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 596-97 (1986). Sever cannot create a genuine issue of fact by simply saying, in effect, disbelieve the record, disregard the defendants' lack of motive when the record was created, and overlook my motive for misrepresenting the record.

Some inmates magnify their symptoms because they are preoccupied with themselves. Others are hypochondriacs, and some are attempting to relieve the boredom of custody. Still others falsely describe their conditions because they seek narcotics or just a bottom bunk, desire on principle to cause expense to the corrections system, or hope to manufacture the raw material for a lawsuit. Human beings in general exaggerate their symptoms because they are human. But even if every inmate were an accurate and complete reporter of his medical condition it is not the case that evidence of an inmate's **complaints** about his medical condition is equivalent to evidence of a medical condition. Much less does a complaint about a condition equal **knowledge** on the part of a medical or corrections officer defendant of that medical condition. A legal rule that allowed an inmate's own *post hoc* description of symptoms to substitute for objective evidence of a serious medical need would be an expensive and foolish alteration in the law. See Boring, 833 F.2d at 473 (holding that in nonobvious cases expert testimony is necessary to establish that a medical need is

12

serious). Because the only evidence that Sever had any serious medical need is Sever's present characterization of his condition, and the contemporary and objective evidence is to the contrary, summary judgment should be entered for all defendants.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: July 3, 2013

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Ronald D. Sever #1404871
K.M.C.C.
P.O. Box 860
Oakwood, VA 24631-0860